**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ALLIANCE FOR WATER EFFICIENCY,** | ) | |
| | ) | |
| Plaintiff, | ) | **No. 14 C 115** |
| | ) | |
| v. | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **JAMES FRYER,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Mr. Fryer has moved for an award of attorney's fees under §505 of the Copyright Act, totaling $57,365 for work done on the appeal of this case ($45,745) and in pursuit of fees ($11,620), and expenses in the amount of $643.53. [*See* Dkt. ## 91, 93, 94]. In his companion motion, he is seeking an additional $133,817.30 in restitution. [Dkt. #96]. To fully understand this case, its history must be reviewed. It is compendiously summarized in *Alliance for Water Efficiency v. Fryer*, 808 F.3d 1153 (7th Cir. 2015), which reversed this court's decision in *Alliance for Water Efficiency v. Fryer*, 2015 WL 102166 (N.D.Ill. 2015). It is also discussed below and in the companion Memorandum Opinion and Order dealing with Mr. Fryer's motion for restitution. *See Alliance for Water Efficiency v. Fryer*, _ WL _ (N.D.Ill. 2017). [Dkt. #116].[1]

---

[1] Dkt. #116 is the number assigned to the Opinion dealing with Mr. Fryer's Motion for Restitution. [Dkt. #96]. Dkt. #115 will be assigned to this Opinion.

# I.

## FACTUAL BACKGROUND

The Alliance had hired Mr. Fryer, an environmental scientist, to research and write a report on the extent to which water demand elasticity during future droughts would be affected by urban water agencies' conservation programs. The Alliance organized the financing for the study through several sponsors, as well as providing the largest funding contribution itself. When Mr. Fryer submitted his draft report, the Alliance was dissatisfied, as were most of the sponsors – according to the Alliance's complaint. The exception was the California Department of Water Resources ("CDW"). The Alliance wanted the report refocused, while Mr. Fryer did not, and the dispute made its way to federal court in the form of the Alliance's four-count Complaint, which sought relief under the Declaratory Judgment Act and charged Breach of Contract, Unjust Enrichment/Restitution, and Copyright Infringement. [Dkt. #1].

The Alliance claimed that it had all legal and tangible rights to the study and the report, including an ownership interest in the files and documents relating to the study. In Count IV, the Alliance alleged that Mr. Fryer's report was a "work made for hire," and that the Alliance owned the copyright to it.[2] The Alliance claimed that Mr. Fryer had infringed on its copyright by speaking about the report at a public forum/seminar. [Dkt. #5, at ¶¶70-74]. On January 15, 2014, Judge Shadur, whom the Seventh Circuit has called "a jurisdiction-hound," *Newman-Green, Inc. v. Alfonzo-Larrain R.*, 854 F.2d 916, 940 (7th Cir. 1988), concluded on his own that there might be a

---

[2] The Act defines a "work made for hire" as either "a work prepared by an employee within the scope of his or her employment," or "a work specially ordered or commissioned . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. Count IV of the Amended Complaint charged conclusorily that the report "constitutes a 'work made for hire' pursuant to the Copyright Act, 17 U.S.C. §101." [Dkt. #5 at 15, ¶70].

defect in the way diversity jurisdiction had been pled, but that any deficiency probably could be cured. Thus, he issued an *ex-parte* order giving the plaintiff the opportunity to cure the allegations of diversity jurisdiction. [Dkt. ##3, 4]. Nothing was said about Count IV or subject matter jurisdiction under the Copyright Act.[3]

Thereafter, on January 17, 2014, the plaintiff filed an Amended Complaint alleging diversity jurisdiction in a manner that it was thought would satisfy Judge Shadur's diversity concerns. It was and again charged that the report was "a work for hire" under the Copyright Act. [Dkt. #5]. On February 14, 2014, Mr. Fryer's counsel filed a motion to dismiss in which he charged that there was no diversity jurisdiction and that there was no subject matter jurisdiction under Count IV. [Dkt. ## 7, 8]. Mr. Fryer argued that the Amended Complaint failed to properly allege that the report had been a "work made for hire" because it stated Mr. Fryer was an independent contractor rather than an employee and failed to allege that the parties had a written agreement designating the report as a work made for hire. [Dkt. #8, at 10, 12].

Before the motion to dismiss was responded to by the plaintiff or ruled on by Judge Shadur, the parties asked him to refer the matter for a settlement conference. He did so on February 21, 2014. [Dkt. #16]. When the parties were again before Judge Shadur on February 26, 2014, he denied that portion of Mr. Fryer's motion to dismiss for lack of personal jurisdiction, and he entered and continued the portion of the motion that had argued that the court lacked jurisdiction under the Copyright Act. [Dkt. #20]. The parties were before me on February 28, 2014, asking that I set a settlement conference. [Dkt. #21]. The settlement conference proceeded less than two weeks later

---

[3] This screening process employed by Judge Shadur is one he uses regularly in cases filed in his court.

on March 13, 2014. On that day, the parties reached a settlement, and their lawyers stated the material terms on the record. It was agreed that contract formation had occurred that day, that there was a binding settlement agreement, and that the ultimate execution of the contemplated written agreement was not a precondition to contract formation. [Dkt. #26 *See also* Dkt. #48]. Under their agreement, if the parties could not agree on a written document, what was read into the record on the 13th would serve as the settlement agreement. That same day, the parties also consented in writing to my jurisdiction. [Dkt. # 25].

When the Alliance put its version of the agreement in writing, however, Mr. Fryer refused to sign, although he admittedly agreed with many of its provisions. The same was true of the Alliance. The Alliance's stance was that Mr. Fryer had agreed on the 13th that he couldn't name certain organizations without their prior permission as it would falsely suggest that his separate report (for himself and CDW) had the Alliance's imprimatur, when it did not. *Alliance for Water Efficiency*, 808 F.3d at 1157. Mr. Fryer's position was that under the settlement on the 13th he had not agreed to exclude the funders (other than the Alliance), and it was his prerogative to credit those who had provided funding and data. An exchange of drafts and counterdrafts followed, but "complete written agreement was never reached . . . [leaving] the March 13 exchange as the definitive settlement." *Alliance for Water Efficiency v. Fryer*, 808 F.3d at 1155.

The Alliance filed a motion to enforce its version of the settlement agreement, which was, in effect, a request for a mandatory injunction. *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1225 (7th Cir. 1993). There followed briefing and argument on the scope of the settlement reached on the 13th and the effect of the ensuing meetings and drafts. In the end, I concluded – erroneously as it turned out – that the settlement read into the record on March 13th contained an implied term

that Mr. Fryer would not include references in his report to PAC members who had not first contacted him and expressed a desire to participate in his report. *Alliance for Water Efficiency v. Fryer*, 2105 WL 102166, at **6-8 (and footnotes); [Dkt. #48]. He did not dispute that he had agreed in the settlement agreement not to mention the Alliance in his contemplated report.

On October 27, 2014, following a telephone conference with the parties, it was agreed that nothing in the March 13th settlement agreement or the ensuing orders precluded Mr. Fryer from making reference in his separate report to the fact that Santa Rosa and/or one or more members of the PAC contributed data to Mr. Fryer's study. [Dkt. #52]. After some additional haggling about the Santa Rosa data, I concluded and the parties agreed that further discussion would not be productive, and the parties were instructed to comply with the terms set forth in the Memorandum Opinion and Order of January 7, 2015. [Dkt. #62].

On January 7, 2015, form AO 450, captioned Judgment In A Civil Action, was filed with the clerk of court dismissing the case. [Dkt. #62]. Mr. Fryer appealed. [Dkt.#63].

At oral argument, the Seventh Circuit pointed out that although injunctive relief was contemplated, there was no document that complied with Fed.R.Civ.P. 65(d)(1). The parties then returned here and obtained a self-contained order that complied with the Court's concerns and Rule 65. *Alliance for Water Efficiency*, 808 F.3d at 1155. [*See* Dkt.#85]. The parties then returned to the Court of Appeals, which determined that Mr. Fryer and the Alliance had not come to a mutual accord on a final written agreement, and therefore that what was read into the record by them on March 13, 2014, was the operative settlement agreement – as the parties had agreed. *Alliance for Water Efficiency*, 808 F.3d at 1157. The Seventh Circuit vacated the injunction "because it contains terms on which the parties have not agreed." *Id.*

5

Prior to its discussion on the scope of the March 13 settlement agreement, the Seventh Circuit addressed the question of jurisdiction, saying: "Fryer contends that this injunction creates a prior restraint that violates the First Amendment. Before we tackle that subject, however, we must decide whether the suit is properly in federal court." *Alliance for Water Efficiency*, 808 F.3d at 1156. If there had been no independent jurisdictional basis for AWE's suit, dismissal, the Seventh Circuit said, rather than adjudication of the appeal would have been the appropriate action. *Cf. Blue Cross Blue Shield v. American Express*, 467 F.3d 634 (7th Cir. 2006); *Lynch, Inc.,* 279 F.3d at 491-92. But the Amended complaint properly pled diversity jurisdiction, and that the Court of Appeals said rendered the suit "independently within federal jurisdiction, even if the original suit would have failed on the merits or should have been dismissed." *Alliance for Water Efficiency*, 808 F.3d at 1157.

Why the parties decided to settle, and why they settled under the terms they did on March 13 is unknown. The Seventh Circuit did not even hazard a guess. It merely noticed that settlements involve "compromise" in which no one gets all of what it wants. *Alliance for Water Efficiency*, 808 F.3d at 1157. Since Judge Shadur had deferred the Alliance's response to and his consideration of the Fryer motion to dismiss Count IV for failure to state a claim, the Alliance had not responded to it. The case was in the earliest stages of the pleadings, and no discovery had been taken. Thus, nothing supports Mr. Fryer's tendentious speculation that the Alliance settled because it knew it ultimately was going to lose on the merits of its suit. It is as likely that Mr. Fryer settled because he feared what the evidence would reveal as it is that the Alliance settled out of fear of defeat or exposure that its suit was frivolous. All that can be said with certainty is, as the Court of Appeals pointed out, "instead of defending, Fryer struck a bargain with the Alliance." 808 F.3d at 1157.

If we assume that one purpose of the fee-shifting provision in §505, like that in other fee shifting statutes, is "to deter the bringing of lawsuits without foundation" and that like them, §505 should be interpreted as allowing fees whenever the plaintiff's "claim was frivolous, unreasonable, or groundless, *" CRST Van Expedited, Inc*., 136 S.Ct. 1642, 1652, it cannot be said on this record that Mr. Fryer is a prevailing party within the meaning of the Copyright Act. He won in the Court of Appeals on the construction to be given to a settlement agreement, not on an issue that advanced the Act's goals or because there was any decision or evidence that Count IV would ultimately be found frivolous or groundless.

The Court of Appeals' concern with how Count IV was pled was jurisdictional, for absent jurisdiction the case would have to be dismissed. Jurisdiction is a matter to be taken quite seriously. *See e.g., Tisza v. Communications Workers of America*, 953 F.2d 298, 300 (7th Cir. 1992) ("Jurisdiction is the first question in every case."). *See also In re UAL Corp*., 408 F.3d 847, 849 (7th Cir.2005)("Appellate jurisdiction is the initial question."); *Sonii v. General Elec. Co.*, 359 F.3d 448, 449 (7th Cir. 2004); *Lucille v. City of Chicago*, 31 F.3d 546, 548 (7th Cir. 1994)("Although *McCall–Bey v. Franzen*...held that a district court may not enforce a settlement agreement unless there is an independent basis of federal jurisdiction, the district judge did not discuss this initial hurdle ... 'Enforcement of [a] settlement agreement...is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis of jurisdiction.'").

After determining that there was jurisdiction because diversity had been sufficiently pled, the Court of Appeals turned to the "merits," on which it promised brevity. The Court vacated the injunction "because it contains terms on which the parties have not agreed." 808 at 1157. The "injunction [went] beyond what the parties agreed [to] on March 13, 2014. It takes the Alliance's

later drafts as if they were a signed contract, which they aren't. On March 13 Fryer promised to remove the Alliance's name from his report. He did not promise to omit the sponsors' names." 808 F.3d at 1157.

Mr. Fryer now insists that the ability to name all the funders in his separate report without their prior permission was the salient event in the case. [Dkt. #105, at 4].[4] Merely because Mr. Fryer says it does not make it so, and a judge is not obligated to credit it because an interested litigant says so. *See Schmude v. Tricam Industries, Inc.* 556 F.3d 624, 628 (7th Cir. 2009)(Posner, J.)("Moreover, every judge is aware that many people who do not have a criminal record will lie in a trial when it is to their advantage."). But even if true, it was not a function of the Copyright Act, but of what his March 13th settlement agreement with the Alliance consisted. Indeed, that crucial fact is largely ignored by Mr. Fryer, even though it is indisputable that the injunction was "vacated because it contains terms on which the parties have not agreed." *Fryer*, 808 F.3d at 1157.

## II.

## THE STATUTORY SCHEME AND PRINCIPLES
## RELEVANT TO THIS CASE

### A.

Section 505 of the Copyright Act provides that:

[i]n any civil action *under this title*, the court *in its discretion* may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court *may* also award a reasonable attorney's fee to the *prevailing party* as part of the costs.

---

[4] In Mr. Fryer's words: "In prevailing on appeal both under the Copyright Act and as to the settlement terms, Fryer protected his right to create and publish a copyrightable work containing the expressive content he desired." [Dkt. #94 at 2]. But, it should be noted, and as we shall see in greater detail, Mr. Fryer did not prevail under the Copyright Act; the construction of the settlement agreement contained terms on which he and the Alliance had not agreed – as the Court of Appeals stressed.

17 U.S.C. § 505 (emphasis supplied). Importantly, for our purposes, under the plain language of §505, a party – plaintiff or defendant – must be the "prevailing party" in a "civil action under [the Copyright Act]" before a court is obligated to exercise its discretion and decide whether to award fees. The Supreme Court appears to have read §505 as only being applicable in a "copyright infringement action" and only to a prevailing party in such an action. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 519 (1994). Congress has included the term "prevailing party" in various fee-shifting statutes, and the Court in another context has said that its approach has been to interpret the term in a consistent manner. *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. _, 136 S.Ct. 1642, 1646 (2016).

Courts cannot ignore "the text of the fee shifting statute" under consideration, any more than they can ignore in other contexts the words chosen by Congress. *See CRST*, 136 S.Ct. at 1653. *Compare Simmons v. Himmelreich*, _U.S._, 136 S.Ct. 1843, 1850 (2016)(courts can't ignore the text of the statute ); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, _U.S._, 134 S.Ct. 1749, 1755 (2014)("Our analysis begins and ends with the text of [the patent act]."); *United States v. Natale,* 719 F.3d 719, 734 (7th Cir. 2013). Under the explicit language of §505 of the Copyright Act, the section on which Mr. Fryer's motion is based [Dkt. # 91, 94],[5] whether to award fees (even to a prevailing party) – is left to the court's discretion. An exercise of that discretion is guided by the list of non-

---

[5] Where the language of a statute is clear, courts need look no farther in interpreting its words. *Puerto Rico v. Franklin California Tax Free Trust*, _U.S._, 136 S.Ct. 1938, 1946 (2016); *Torres v. Lynch*, 136 S.Ct. 1619, 1636 (2016);*United States v. Ron Pair Enterprises,* 489 U.S. 235 (1989); *Cler v. Illinois Education Assoc.*, 423 F.3d 726 (7th Cir. 2005); *Gilden v. Bowen*, 384 F.3d 883 (7th Cir. 2004). In *CRST Van Expedited, supra*, the Supreme Court did not conclude that the text of a particular statute did not count in the analysis of who is a prevailing party. Rather, it held that neither the text nor the policy of the fee shifting statute in Title VII cases supported the notion that only by obtaining a "ruling on the merits" could a defendant be a prevailing party under that statute. And while we shall proceed on that assumption, it does not change the outcome of this case.

exclusive discretionary factors discussed in *Fogerty*. *See  infra* at 24*; JCW Investments, Inc. v. Novelty, Inc.*, 509 F.3d 339, 342 (7th Cir. 2007). That discretion is broad. *Kirtsaeng v. John Wiley & Sons, Inc.*, __U.S.__, 136 S. Ct. 1979, 1988 (2016); *United States v. Kluball*, 843 F.3d 716 (7th Cir.  2016); *Bell v. Lantz*, 825 F.3d 849, 852 (7th Cir.  2016).  And review of a fee decision is under the lenient and deferential abuse of discretion standard. *Dobbs v. DePuy Orthopedics, Inc*., 842 F.3d 1045, 1048 (7th Cir. 2016). Deferential review, however, does not give the district court unfettered discretion. It "still bears the responsibility of justifying its conclusions." *Id*.

The Seventh Circuit has explained that:

the two most important considerations in deciding whether to award fees 'are the strength of the prevailing party's case and the amount of damages or other relief the party obtained.  If the case was a toss-up and the prevailing party obtained generous damages, or injunctive relief of substantial monetary value, there is no urgent need to add an award of attorneys' fees.'

*Klinger v. Conan Doyle Estate, Ltd.*, 761 F.3d 789, 791 (7th Cir. 2014).

 At the other extreme are cases where the claim or defense was frivolous, and the prevailing party obtained no relief at all.  Then, the case for awarding attorneys' fees is compelling. *Id*. at 789. A presumption in favor of a fee award to a successful defendant ensures that in a copyright infringement case, the defendant does not abandon a meritorious defense in situations in which "the cost of vindication exceeds the private benefit to the party." *Assessment Technologies of WI, LLC v. WireData, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004). If there is no prospect of a fee award, an infringement defendant might be forced into a nuisance settlement or deterred from exercising its rights.  *Klinger*, 761 F.3d at 789. When the prevailing party is a defendant who receives no award, the presumption in favor of awarding fees in usually strong. *Liang v. AWG Remarketing, Inc.*, 2016 WL 428294, at *6 (S.D.Ohio 2016) (citing *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361

F.3d 434, 437 (7th Cir. 2004).

Mr. Fryer's fee petition is limited to work done in the appeal before the Seventh Circuit – a Court of Appeals often determines the fee worthiness of work done before it[6] – and that appeal focused on the terms of the settlement agreement the Alliance and Mr. Fryer reached at the settlement conference on March 13th .

## B.

A settlement agreement, whether oral or written, is a contract, and its construction and enforcement are governed by basic contract principles under applicable state law, as the Court of Appeals made clear in this case. *See also Jones v. Ass'n of Flight Attendants CWA*, 778 F.3d 571, 573 (7th Cir. 2015); *Ventre v. Datronic Rental Corp.*, 482 Fed.Appx. 165 (7th Cir. 2012); *Holmes v. Potter*, 552 F.3d 536, 539 (7th Cir.2008); *Newkirk v. Village of Steger*, 536 F.3d 771, 774 (7th Cir.2008); *Dillard v. Starcon Intern., Inc.*, 483 F.3d 502, 506-07 (7th Cir. 2007). And this is so regardless of the claim's derivation – that is whether it arose originally under federal or state law. *See* cases *supra*, and *Bala v. Commonwealth Of Virginia Department Of Conservation And Recreation*, 614 Fed Appx. 636 (4th Cir. 2015).

Federal courts lack "inherent" power to enforce settlements of federal litigation. Since enforcement of a settlement agreement is more than just a continuation or renewal of the dismissed suit, a motion to enforce a settlement agreement requires its own basis of jurisdiction. *Alliance*

---

[6] *See Roth v. Pritikin*, 787 F.2d 54, 57 (2nd Cir. 1986). *See also Twin Peaks Production, Inc. v. Publications Intern. Ltd.*, 996 F.2d 1366, 1383 (2nd Cir. 1993). *In Klinger v. Conan Doyle Estate, Ltd.*, 761 F.3d 789, 791 (7th Cir. 2014),the Court of Appeals determined the fees for work done on appeal; *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 883 (9th Cir.2005)(affirming an award of attorney's fees pursuant to 17 U.S.C. 505 for work done on appeal)(explained in *Natural Resources Defense Council, Inc. v. Winter*, 543 F.3d 1152, 1164 (9th Cir 2008).

*supra; Lucille v. City of Chicago*, 31 F.3d 546, 548 (7th Cir.1994). The court typically inquires whether the settlement agreement was knowing and voluntary and what was the overarching intent of the parties. *See Hardy v. CHA*, 189 Fed.Appx 510 (7th Cir. 2006); *In re Doyle*, 144 Ill.2d 451, 468, 581 N.E.2d 669 (1991).

No one disputes that at the time of the March 13th settlement conference, Judge Shadur had decided the question of diversity jurisdiction favorably to the Alliance, and he had entered and continued Mr. Fryer's motion to dismiss Count IV. The settlement conference occurred within weeks of the lawsuit's filing and without discovery by either side. The case was settled on the same day as the settlement conference. However, the parties could not agree on a written settlement agreement thereafter, and thus, what was read into the record on March 13th became the settlement agreement. The Opinion of the Court of Appeals focused on that agreement. It is indisputable that the implementing injunction was "vacated because it contain[ed] terms on which the parties have not agreed." *Alliance for Water Efficiency*, 808 F.3d at 1157.

The Court did not focus on "[e]nforcing the benefits of a settlement that *resolved* Copyright issues" in the sense that Mr. Fryer subtly uses the word. (Emphasis supplied). In view of Mr. Fryer's syntax, it is important to remember that "[u]nlike Humpty Dumpty... a litigant cannot use words any way [he] pleases. ... Abraham Lincoln once was asked how many legs a donkey has if you call its tail a leg. His answer was four: calling a tail a leg does not make it one." *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635, 637 (7th Cir. 2011). Just so with Mr. Fryer's use of the word "resolve." It is well to recall Justice Holmes's admonition that "[w]e must think things, not words, or at least we must constantly translate our words into facts for which they stand, if we are to keep to the real and the true." Holmes, *Law and Science and Science and Law*, 12 Harv.L.Rev.

443, 460 (1889).

Even a consent judgment reflects the compromise of the parties' inevitably clashing and divergent interests, and so it cannot be construed as though it were a reflection of the maximum aspirations of one side or a reflection of what might have been achieved had the particular issues solved by the consent order been played out to their ultimate conclusion. *See, United States v. Armour & Co.,* 402 U.S. 673, 682 (1971); *White v. Roughton,* 689 F.2d 118, 119–20 (7th Cir.1982); *Alliance to End Repression v. City of Chicago,* 119 F.3d 472, 475 (7th Cir.1997).[7]

## III.

## ANALYSIS

Under §505, the question is whether, when the parties were before the Seventh Circuit, arguing about the terms of their settlement agreement, Mr. Fryer prevailed not on a contract construction matter, but on an action under the Copyright Act. It must be said that he did not. Accordingly, his motion for an award of attorney's fees under 17 U.S.C. §505 should be denied.

## A.

When the case was still before the district court it included a Copyright Act claim as one of four counts. But, the entire case was settled with the March 13th agreement. Mr. Fryer may have been entitled to an award of attorney's fees under 17 U.S.C. § 505 if the case had been dismissed by Judge

---

[7] It can, though, be a basis for a fee award, as can a settlement agreement under certain limited circumstances (such as being enforced through a consent decree). *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources,* 532 U.S. 598, 604 (2001); *Robinson Farms Co. v. D'Acquisto,* 962 F.2d 680, 684 (7th Cir.1992)("plaintiff need not succeed at a formal trial to receive fees under civil rights statute, so long as he or she has vindicated rights in some manner, e.g. via settlement."); *Parker v. Matthews,* 411 F.Supp. 1059, 1064 (D.C.D.C. 1976)("Title VII lawsuit must be determined by a close scrutiny of the totality of the circumstances surrounding a settlement, focusing particularly on the necessity for bringing the action and whether the party is the successful party with respect to the central issue—discrimination.").

Shadur or the plaintiff agreed to a voluntary dismissal with prejudice as in *Bell v. Lantz*, 825 F.3d at 850. *See also Riviera Distributors, Inc. v. Jones*, 517 F.3d 926, 928 (7th Cir. 2008)(voluntary dismissal with prejudice (after discovery) makes defendant the prevailing party). But, as Mr. Fryer concedes, the case was settled quickly and with no discovery. No one got everything they wanted. "But that's the nature of a compromise. Neither side gets everything it wants." *Alliance for Water Efficiency*, 808 F.3d at 1157.

If the Court of Appeals had held that Mr. Fryer had agreed not to use the PAC members' names without their permission, the Copyright Act claim would not have been resurrected. Nor would the Copyright Act have been violated or even involved. It simply would have been a compromise that he and the Alliance made. The appeal, it must be repeated, was about the terms of the settlement agreement – what the parties had agreed to, and thus whether the injunction accurately reflected that agreement. "Fryer is therefore under no obligations beyond those undertaken in the settlement agreement." *Alliance for Water Efficiency*, 808 F.3d at 1157.

If there were Copyright Act issues at stake, surely Mr. Fryer would have argued that in his appellate brief. He did not. Indeed, the entire, lengthy Argument section of his brief does not contain any argument about copyright. (*See* Appellant's Brief and Appendix, at 23-51). His arguments on appeal were focused on and limited to First Amendment prior restraint and contract interpretation issues. Mr. Fryer did not ask the Court of Appeals for an award of fees under the Copyright Act, *see Jannotta v. Subway Sandwich Shops, Inc.*, 225 F.3d 815, 819-20 (7th Cir. 2000)(petition for fees incurred for work in the appellate court may properly be filed with the appellate court), which seems odd because he did ask for other relief. He asked that the court remand the case to the district court with instructions to enter an order indicating that he was only required to remove his reference to the

Alliance in his report, to order the Alliance to return the Santa Rosa data to him, and to vacate the order prohibiting him from soliciting input from advisory group members, and to consider appropriate relief for the Alliance's delay in paying him the settlement amount. (Appellant's Brief and Appendix, at 50-51). The Seventh Circuit reversed without remanding the case back to the district court, holding simply that the parties were obligated by the terms of the March 13th settlement.

The Seventh Circuit devoted a few sentences to the prior restraint issue under the First Amendment, ultimately declining to rule on the issue "unnecessarily," and confined itself to contract interpretation: what did the parties agree to do – or not do – in their March 13th settlement agreement. *Alliance for Water Efficiency*, 808 F.3d at 1157. Nowhere did the Court of Appeals suggest that the Copyright Act prevented Mr. Fryer from agreeing not to name any of the funders in his report without their prior permission. In fact, he had agreed not to name the Alliance, and that was held to be perfectly acceptable. But, as Mr. Fryer, himself, "contend[ed]," *Alliance for Water Efficiency*, 808 F.3d at 1156, the Court suggested only that the prior restraint doctrine under the First Amendment would have prevented the Alliance from seeking to enjoin Mr. Fryer if he broke his agreement. The Alliance's only remedy in that event would be a suit for its actual damages, if any.

Mr. Fryer's mention of the Copyright Act in the Court of Appeals came in his jurisdictional statement, when he argued that there could be no federal jurisdiction based on the Alliance's Copyright Act claim because the claim (as initially pled) could not support federal jurisdiction. (Appellant's Brief and Appendix, at 1-3). The Alliance had, it should be noted, pled conclusorily that Mr. Fryer's report was a work for hire. While a frivolous federal law suit cannot be the basis for federal jurisdiction, *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 765 (7th Cir. 2015), *objective*

frivolousness (one of the *Fogerty* factors to be assessed in determining an exercise of discretion under §505), (*see infra* at 24) and insufficient pleading are not necessarily or inevitably the same thing. Indeed, more often than not, they are quite different. *See Hagans v. Lavine*, 415 U.S. 528, 537–38 (1974). If they were the same, dismissals and not repleading would be the norm.

The Seventh Circuit did not call the Alliance's claim in Count IV "frivolous;" indeed that word does not appear anywhere in the Court of Appeals Opinion. It said that as pled (and it must be remembered that the case was in its infancy, and the Alliance had not been asked or given the chance to replead Count IV), the Count could not support federal question jurisdiction.[8] *Compare Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 152 F.Supp.3d 503, 515 (E.D.Va. 2015 (court awarded fees to defendant because court found suit was brought in bad faith (following summary judgment in defendant's favor); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 152 F.Supp.3d 503, 515–16 (E.D.Va. 2015).

Mr. Fryer calls the Seventh Circuit's brief reference to the pleading of Count IV an "alternative ruling to its conclusion that there was diversity jurisdiction." [Dkt. # 94-2, at 11]. It was no such thing, and that reading of the Opinion precludes a valid comparison with the very

---

[8] Perhaps the Alliance took too literally and out of context the oft-repeated statement that a federal complaint need not plead facts necessary to support a plaintiff's claim. *Staples v. Paragon Systems, Inc.,* 67 Fed.App'x 659 (7th Cir. 2015); *Schmitz v. Canadian Pacific Railway Co.,* 454 F.3d 678, 682 (7th Cir. 2005); *Lewis v. Kumar*, 146 Fed.App'x 55 (7th Cir. 2005). It has been held that a district court is without subject matter jurisdiction to hear a claim for federal copyright infringement "unless a plaintiff asserts in its pleadings facts showing it has satisfied the statutory formalities ...." *Isbell v. DM Records, Inc.*, 2004 WL 1243153, at *3 (N.D.Tex.2004). But the fact remains that the court said that the Alliance's (initial) pleading was insufficient to support federal jurisdiction. But that does not make it a case within §505.

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007) held that while heightened fact pleading of specifics it is not required, there must be enough facts to state a claim to relief that is plausible on its face. The difficulty is that the Alliance never was asked its views about the adequacy of the way it pled Count IV or was told or allowed to replead Count IV. Instead, the parties asked for a settlement conference, and they were immediately accommodated.

complicated opinion in *Magnus Electronics, Inc. v. La Republica Argentina*, 830 F.2d 1396 (7th Cir.

1987) with its labyrinthine history. At the threshold, it should be noted that *Magnus Electronics, Inc.*,

unlike this case, had a "long and tortured life in the district court and has resulted in a number of

opinions from that court." 830 F.2d at 1397. Here, there essentially was no history in the district

court, no prior opinions, and the Opinion of the Court of Appeals could not have been more

straightforward. *Magnus Electronics, Inc.* involved a determination by Judge Shadur – following

his dismissal of the case on jurisdictional grounds after the opportunity was accorded the plaintiff

to replead – which barred the plaintiff from refiling the "same cause of action as was alleged in

*Magnus I*" because of the doctrine of *res judicata*. *Id.* at 1400. The Court of Appeals, in a complex

decision, held that Judge Shadur's dismissal of the case did indeed preclude *Magnus* from refiling

the "same cause of action." That is, it could not file a new suit in the district court and allege the

same jurisdictional bases that were available to it at the time Judge Shadur dismissed the case. *Id.*

at 1402. Additionally, Judge Shadur had issued Rule 11 sanctions even though the plaintiff's lawyers

argued that they were gulled into taking certain action by the court. In short, the instant case does not

involve the kind of complex core rulings involved in *Magnus Electronics, Inc.* and any attempt to

compare this case to *Magnus Electronics* is futile.

As the Court of Appeals noted here, an action to enforce a settlement agreement – which was

what the case was – is "independently within federal jurisdiction, even if the original suit would have

failed on the merits or should have been dismissed." *Alliance for Water Efficiency,* 808 F.3d at 1157.

In any event, the amount of time and effort expended by Mr. Fryer's counsel on this

pleading/jurisdictional issue, even if compensable, does not and could not even begin to approach

the large amount of fees he is seeking under §505. That conduct is a factor to be taken into

consideration in exercising discretion.

Jurisdiction, then, was found in the diversity of citizenship between Mr. Fryer and the Alliance on a motion to enforce a settlement agreement that was independent of a Copyright Act claim that the Alliance alleged but once – inadequately – in the district court. In the end, the brief passage regarding jurisdiction based on the vanished Copyright Act claim turned out not to be necessary to the Seventh Circuit's jurisdictional decision allowing the case to proceed. And Mr. Fryer's reliance on that passage to demonstrate that he prevailed in the Seventh Circuit on a Copyright Act claim is misplaced.

Even further off base is Mr. Fryer's reliance on the Seventh Circuit's passage requiring any future breaches of the settlement agreement to be brought where the parties specified in their agreement of the 13th: "If Fryer should violate any provision of the March 13 settlement, the Alliance can pursue a remedy in damages—in federal court if the injury exceeds $75,000, and otherwise in state court. The March 13 agreement specifies venue: the Alliance will sue Fryer only in California, and Fryer will sue the Alliance only in Illinois. This means that the Alliance cannot return to the Northern District of Illinois with any further contention that Fryer has failed to keep his promises." *Alliance for Water Efficiency*, 808 F.3d at 1157.

As the Court of Appeals held, a suit to enforce a settlement agreement is a contract claim applicable under state law. *See supra* at 6*; Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 381–82 (1994); *Jones v. Assn. of Flight Attendants-CWA*, 778 F.3d at 573; *Laserage Tech. Corp. v. Laserage Laboratories Inc*., 972 F.2d 799, 802 (7th Cir. 1992). So, even if there had once been a Copyright Act claim, it was gone, and jurisdiction over any future disputes about the scope and meaning of the settlement agreement was a matter of diversity. The Seventh Circuit has

explained this on a number of occasions, perhaps best, in view of Mr. Fryer's position, in *Arrow Gear Co. v. Downers Grove Sanitary Dist.*, 629 F.3d 633, 637 (7th Cir. 2010):

> the court cannot entertain the suit to enforce the settlement unless there is an independent basis of federal jurisdiction over such a suit. The original suit may have been a federal antitrust suit, of which the district court had jurisdiction under 28 U.S.C. § 1331. But if the new suit—a suit to enforce a settlement of the antitrust suit—were between citizens of the same state, and the law on which the new suit was based was state contract law (a settlement is a contract) rather than federal law, the federal court would not have jurisdiction.

*Id.* at 637. Again, the brief passage on how Count IV was initially pled reflected jurisdictional concerns that ultimately proved unnecessary to the Seventh Circuit's holdings about the scope of the settlement agreement. Diversity jurisdiction was found to have been properly pled, and that was enough to enable the Court of Appeals to entertain the case. The Court dealt with – and the parties argued about – contract issues, not substantive Copyright Act issues. In other words, Mr. Fryer prevailed in the Seventh Circuit not because of the Copyright Act or any of the goals it seeks to achieve, but because the Court of Appeals found that the lower court had, as a matter of contract interpretation, improperly concluded that the parties had agreed to something they had not.

**B.**

Mr. Fryer claims that for him the option to name the funders of the study was perhaps the most important part of his report. [Dkt. # 94-2, at 3, 9; Dkt. #105, at 4, 9]. But, Mr. Fryer's "saying so does not make it so...." *Allen v. GreatBanc Trust Co.*, 835 F.3d 670, 679 (7th Cir. 2016). *Accord Spano v. The Boeing Co.,* 633 F.3d 574, 588 (7th Cir. 2011); *Beacon Const. Co. of Mass. v. Prepakt Concrete Co.*, 375 F.2d 977, 980 (1st Cir.1967). And a party's claimed sincerity does not change this fundamental axiom of experience. *Nankin v. Beverly Enterprises Wisconsin, Inc.*, 774 F.Supp. 540, 543 (E.D.Wis. 1991). Moreover, on its face, the claim is unpersuasive. What the report said and the

results it reached seem infinitely more important than the identity of those who early on may have been willing to fund they study. After all, Mr. Fryer had agreed not to name the Alliance, and they were a major funder. Even if one were to agree that unless Mr. Fryer were allowed to mention those who participated in the Project Advisory Committee, some readers may unfairly associate Fryer's report with the Alliance, the Court of Appeals was nonetheless concerned exclusively with what was agreed to on March 13th. And that was a "compromise. Neither side gets everything it wants." *Alliance for Water Efficiency*, 808 F.3d at 1156-57.

Mr. Fryer doesn't get too deeply into how this amounts to a Copyright Act issue. He merely says the list of funders is "expressive content." [Dkt. # 94-2, at 3]. But under his formulation, so too is everything, including the name of the Alliance. But neither Mr. Fryer nor the Alliance has any copyright on the names of the funders. The Act protects only the form of an author's expression, not the facts or ideas being expressed. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 556 (1985); *Hobbs v. John*, 722 F.3d 1089, 1094-95 (7th Cir. 2013)("the Copyright Act does not protect general ideas, but only the particular expression of an idea."); *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003)("every idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication.").

Thus, it is hardly surprising that the Seventh Circuit did not hold that the Copyright Act precluded an agreement that Mr. Fryer refrain from naming the funders/PAC members without their prior permission; nor did Mr. Fryer argue this. On the contrary, the Seventh Circuit vacated the injunction not because of the Act, but "because it contains terms on which the parties have not agreed." 808 F.3d at 1157. It was a matter of agreement, not a matter of what the Copyright Act allowed or protected or required.

Some of the discussion from *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996), in which the Seventh Circuit considered the preemptive effect of the Copyright Act, 17 U.S.C. §301(a), on rights that parties created by contract – specifically, a shrinkwrap license – might provide some guidance:

> Copyright law forbids duplication, public performance, and so on, unless the person wishing to copy or perform the work gets permission; silence means a ban on copying. A copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create "exclusive rights."

*Id*. at 1454. Under their agreement of March 13th, neither Mr. Fryer nor the Alliance had any exclusive right to the fact that certain organizations may have funded the study. This was clearly not a Copyright Act issue about exclusive rights against the world. The agreement was between Mr. Fryer and the Alliance. *See Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 646 (7th Cir. 2003)("The scope of a copyright is given by federal law, but the scope of contractual protection is, at least *prima facie,* whatever the parties to the contract agreed to.").[9]

Between themselves, Mr. Fryer and the Alliance could agree who Mr. Fryer could not mention and who the Alliance could, and *vice versa*. And they did.[10] The Seventh Circuit's problem

---

[9] One hesitates to go too far afield with references to preemption, but Mr. Fryer argues, again and again, that the March 13th settlement agreement was an embodiment of his Copyright Act rights and protected his Copyright Act rights as author. [Dkt. #94-2, at 3, 5-6, 9, 10, 12; Dkt. #105, at 3, 4, 6, 10]. Courts are not bound by partisan contentions. The Copyright Act provides that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright ... are governed exclusively by this title." 17 U.S.C. § 301(a). Surely, if the rights set forth in the March 13th settlement agreement were part and parcel of Mr. Fyer's Copyright rights – in other words, "equivalent to any of the exclusive rights within the general scope of copyright" – as he asserts, his appellate brief, and the Seventh Circuit's Opinion, would have focused on the Copyright Act – or at least discussed it – rather than focusing on the contract analysis.

[10] While Mr. Fryer concedes that he agreed not to mention the Alliance as a sponsor, he never argues – and the Court of Appeals never held – that the Act precluded him from contracting not to mention other

continue...

was not with that, but with the injunction, which, in going beyond the party's agreement, improperly restricted Mr. Fryer from including the names of funders without their prior permission. 808 F.3d at 11857– 58. In short, the case before the Court of Appeals was about the scope of the settlement agreement and not about the Copyright Act.

## C.

We come then to the matter of discretion. Under §505, the section on which Mr. Fryer's motion is based [Dkt. # 91, 94], the decision whether to award fees is left to the court's discretion, which is broad. *Kirtsaeng*, 136 S. Ct. at 1988. "[D]iscretion denotes the absence of a hard and fast rule." *Langnes v. Green,* 282 U.S. 531, 541 (1931). Being a range, not a point, discretion allows two decision-makers, on virtually identical facts, to arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *See Mejia v. Cook County, Ill.,* 650 F.3d 631, 635 (7th Cir. 2011); *Unite d States v. Banks,* 546 F.3d 507, 508 (7th Cir. 2008). Indeed, a "district judge's substantial discretion [where discretion otherwise exists] ... ensures inconsistency." *Johnson v. Daley,* 339 F.3d 582, 593–594 (7th Cir.2003). *See also McCleskey v. Kemp*, 753 F.2d 877, 891 (5th Cir. 1985)("'The very exercise of discretion means that persons exercising discretion may reach different results from exact duplicates."), *aff'd., McCleskey v. Kemp*, 481 U.S. 279, 289-290 (1987).

This is not to say that a court can act as it pleases, and that there are no criteria to guide an exercise of discretion. There are – in Copyright Act cases, no less than in others. *See Kirtsaeng*, 136 S.Ct. at 1985; *Fogerty, supra*; *Bell v. Lantz*, 825 F.3d 849, 850 (7th Cir. 2016); Paul Goldstein, II

---

[10]...continue

funders or contributors. Whether he could mention funders (including the Alliance) was not a matter of Copyright, but of contract. The Seventh Circuit found only that, "[o]n March 13, Fryer promised to remove the Alliance's name from his report", and that he was obligated to live up to that promise.

Goldstein On Copyrights, Section 14.3.2.2 at 14:72 (3rd ed. 2016). Indeed, "discretion is never without limits," *System Federation No. 91, Ry. Employees Dept. v. Wright,* 364 U.S., 642, 648 (1961), and always requires a consideration of the factors relevant to that exercise. *United States v. Roberson*, 474 F.3d 432, 436 (7th Cir. 2007); *United States v. Cunningham,* 429 F.3d 673, 679 (7th Cir. 2005). It is often said that an abuse of discretion occurs when no reasonable person could take the view of the district court. *United States v. Re*, 401 F.3d 828, 842 (7th Cir. 2005).

While there is wide latitude to award attorney's fees, results should be based on "'the larger objectives of the relevant Act.'" *Kirtsaeng*, 136 S.Ct. at 1986. That is, "courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals. *Id*. at 1986, 1989. *See also Palladium Music, Inc.*, v. *EatSleepMusic, Inc.*, 398 F.3d 1193, 1198 (10th Cir. 2005). There is no precise rule or formula for making discretionary judgments under the Act. Instead, equitable discretion in Copyright Act cases should be exercised in light of the non-exhaustive factors enumerated by the Supreme Court, including: (1) the frivolousness of the action; (2) the losing party's motivation for filing or contesting the action; (3) the objective unreasonableness of the action; and (4) the need to advance considerations of compensation and deterrence. *Fogerty,* 510 U.S. at 534-35. *See also JCW Investments, Inc. v. Novelty, Inc.*, 509 F.3d 339, 342 (7th Cir. 2007).

Assuming this were an action under the Copyright Act within the meaning of §505, Mr. Fryer's attempt to avoid the American rule that each side bears its own fees in the absence of a contrary statute, *Bell*, 825 F.3d at 852, and for this court to exercise its discretion and award him $57,365 in fees for work done on the appeal of this case [($45,745), in pursuit of fees ($11,620), and expenses in the amount of $643.53. [Dkt. # 91, 94]] is inappropriate and unreasonable. The facts are significant and warrant repeating: the proceedings before Judge Shadur ended quickly, largely

without input from the Alliance. There was no discovery, and the case was settled almost immediately, without any copyright issues being decided. The settlement conference before me on March 13th ended the day it began. Why the parties chose to settle as quickly as they did – something judges urge litigants to consider – is uncertain. What is clear is that they did not settle in a way that it could be said that the Copyright Act claim was frivolous, objectively unreasonable or brought in bad faith.

All that can be said with certainty is, as the Court of Appeals pointed out, "instead of defending, Fryer struck a bargain with the Alliance." 808 F.3d at 1157. The question was how far had the parties gone in their agreement. The Court of Appeals rejected the Alliance's interpretation and found that Mr. Fryer had the better of the contract argument. But the scope of the parties' settlement agreement was not an issue under the Copyright Act; it was a contractual issue between the parties. Viewed properly, the Opinion corrected a misinterpretation of the parties' settlement agreement of March 13th. Under these circumstances, and even if it could be argued correctly that Mr. Fryer was a prevailing party in a copyright act case, I do not believe that an exercise of my equitable discretion - taking into account the factors discussed in *Fogerty* – warrants an award of the fees and costs to Mr. Fryer pursuant to §505, which is the basis of his request.

**D.**

The cases Mr. Fryer relies upon to support his request for an award of attorney's fees under §505 do not advance his position. In *Vukadinovich v. McCarthy*, 59 F.3d 58 (7th Cir. 1995), the Seventh Circuit upheld an award of attorney's fees as a sanction under Fed.R.Civ.P. 11. The plaintiff refused to pay the award, which prompted garnishment proceedings which, of course, meant additional money spent on attorney's fees. The Seventh Circuit held that a defendant who incurs fees

in the pursuit of a fee award is entitled to those fees as well. 59 F.3d at 61. That holding is unexceptional but does not apply here. Mr. Fryer somehow likens the case to the enforcement of a settlement agreement, but it's difficult to see the similarity or how §505 would require a fee award. Mr. Fryer was not pursuing a fee award; his argument involved the scope of the settlement agreement – a point over which he and the Alliance could not agree. It's impossible to see how *Vukadinovich v. McCarthy* requires or supports a holding that Mr. Fryer prevailed in the Seventh Circuit "[i]n [a] civil action under this title," as 17 U.S.C. §505 requires, and therefore that §505 requires a fee award in this case.

Similarly perplexing is Mr. Fryer's reliance on *Balark v. Curtin*, 655 F.2d 798 (7th Cir. 1981), as it too dealt with an award of fees incurred in garnishment proceedings. In that case, the prevailing plaintiffs had successfully litigated Civil Rights issues, obtained a judgment, and then had to pursue that judgment through additional proceedings when the defendant refused to pay. Here, the Copyright Act claim and others were settled months earlier. As already noted, the issues before the Seventh Circuit were what the parties agreed to and if the terms of the injunction were faithful to that agreement. And, even if Mr. Fryer failed in the Seventh Circuit, he would have failed based on a finding that he had agreed not to name the funders without their prior permission, and not because of the Copyright Act.

In *Estate of Cencula v. John Alden Life Ins. Co.*, 174 F. Supp. 2d 794 (N.D. Ill. 2001), the plaintiff succeeded on a summary judgment motion in his ERISA case, and the court entered a judgment finding the defendant liable for the plaintiff's unpaid medical bills. *Id.* at 796. The parties then entered into a settlement agreement that had defendant paying plaintiff's medical bills, insurance premiums, prescription expenses, and attorney's fees. But, the defendant ended up

dragging its feet on most, if not all, of its obligations under the agreement, and plaintiff had to return to court to enforce the settlement agreement. *Id.* at 796-97. The court intervened – to a degree – and the defendant finally came through with some very tardy payments. The court also awarded the plaintiff the attorney's fees he incurred in forcing the defendant to fulfill the obligations it had agreed to. 174 F.Supp.2d at 801-02. In that sense, the case is not any different than *Balark v. Curtin*.

The difference between *Cencula* and the instant case is rather clear, and serves to underscore the points made thus far. When the parties settled in *Cencula*, the court had found the defendant liable on the plaintiff's ERISA claim. The subsequent settlement was limited to the damages the defendant would pay and when it would pay them. Plaintiff's efforts to enforce that settlement were efforts to enforce a previous ERISA judgment. 174 F.Supp.2d at 801. The same is not true of Mr. Fryer's efforts before the Court of Appeals. The parties' March 13th agreement left no vestiges of the Alliance's complaint about Mr. Fryer speaking about the report at seminars. The parties would each produce their own report, and Mr. Fryer could talk about it all he liked. And, as has been repeated over and over, that was never an issue before the Seventh Circuit, and it wasn't even mentioned in Mr. Fryer's appellate brief. Little wonder.

That the Opinion initially spoke of jurisdiction was because jurisdiction is the first issue in every case. *See* cases *supra* at 7. Once the Count charging "work for hire" was disposed of – and it was disposed of in a paragraph, 808 F.3d at 1156 – the Court of Appeals satisfied itself that diversity jurisdiction existed and that given diversity of citizenship and the amount in controversy, an action to enforce the settlement contract is independently within federal jurisdiction. 808 F.3d at 1156. Certain the case could proceed jurisdictionally, the Court of Appeals turned to "the merits," 808 F.3d 1157, which were solely about what the parties had agreed to in their settlement agreement of March

13 – a settlement that, it bears repeating, had witnessed no discovery, no judgment in favor of anyone, no request by Judge Shadur or opportunity for the Alliance to replead Count IV, and which came within weeks of the lawsuit against Mr. Fryer as the Seventh Circuit said "instead of defending, however, Fryer struck a bargain" with the Alliance. 808 F.3d at 1157.

With all deference, Mr. Fryer misapprehends the thrust of *Liberty Media Holdings, LLC v. FF Magnat Ltd.*, 2012 WL 3834744 (D.Nev. 2012). That case does not articulate the proposition that a party in every case that began with a multi-count complaint, one count of which was brought under the Copyright Act, is entitled to attorney's fees if his construction of a subsequent settlement agreement is sustained by the Court of Appeals. Nor does it pretend to. As in all cases, the factual setting is critical. *See Upjohn Co. v. United States*, 449 U.S. 383, 390–91 (1981); *Sandra T.E. v. South Berwyn School Dist.*, 600 F.3d 612, 619 (7th Cir. 2010).

The case began as a Copyright Act case and essentially remained one through a settlement agreement and attempts to enforce that settlement. Defendant agreed to pay $550,000 to the Plaintiff, and promised that it would "take both strong and bold measures to keep Liberty Media content off of its servers," that it would "assist Liberty in identification and civil prosecution of any parties who have been using Oron to distribute Liberty's copyrighted material," and that plaintiff would have "unfettered access to takedown/delete any of Liberty's material that are being distributed through Oron.com." 2012 WL 3834744, at *1.

Through the settlement agreement, the plaintiff was distinctly advantaged and in a far better position than before the suit was filed. When the defendant balked at doing what he had promised and what was required by the Act, the plaintiff was required necessarily to continue preparing its brief in support of its motion for preliminary injunction in accordance with the extended briefing

schedule. 2012 WL 3834744, at *1.  The district court held that the defendant had broken its promise in all particulars, and, in addition, even went so far as to dispute that it had ever made the promises attributed to it in the settlement agreement. The plaintiff brought a motion to enforce the agreement, which the district court granted.  2012 WL 3834744, *1.

A discretionary award of fees under §505 was sought by the plaintiff and was deemed appropriate by the district court because, although the court had to address the issue of the scope of the agreement in light of the defendant's claim that it had not agreed to what was attributed to it, the end result required the plaintiff to continue work on his motion for preliminary injunction to enforce the terms of the Copyright Act.  The agreement, which had been frustrated by the defendant's illicit and obstructive conduct, embodied the resolution in the plaintiff's favor of his Copyright Act claims. The work that was required to correct the defendant's faithless behavior was not only contrary to the settlement agreement, but plainly furthered the goals of the Copyright Act and the plaintiff's acknowledged rights under it.  2012 WL 3834744, at *4.

Copyright Act issues were not even mentioned in the arguments before the Seventh Circuit. As we have said, there was no risk that, if Mr. Fryer lost on appeal, the Alliance's Copyright claim would have sprung back to life or otherwise left Mr. Fryer and the Alliance at risk under the Act. Either the Alliance had the better of the interpretation of the agreement or Mr. Fryer did. That was the question confronting the Court of Appeals. And finally, unlike the situation in *Liberty Media Holdings, LLC*, neither side was advancing any substantive copyright analysis in arguing about the scope of the settlement agreement that would affect the Act or its goals, regardless of the outcome of the case in the Court of Appeals. The Court of Appeals Opinion in this case merely held the parties to a private bargain they made at the settlement conference on March 13th and one whose outcome

would neither advance nor compromise the Act or its goals.

Mr. Fryer takes too much to heart the statement in the non-copyright case of *United States v. Parker*, 120 U.S. 89, 95 (1887) that "a *retraxit* is an open, voluntary renunciation of his claim in court, and by this he forever loses his action." [Dkt. # 94-2, at 6]. Apart from the fact that "general propositions do not decide concrete cases," *Lochner v. New York*, 198 U.S. 45, 76 (1905)(Holmes, J., dissenting); *see also Barnhart v. Thomas,* 540 U.S. 20, 29 (2003), the applicability of any "pronunciamento," taken out of context, *Wisehart v. Davis,* 408 F.3d 321, 326 (7th Cir.2005), is unlikely to resolve this case. One from a 130-year old opinion that did not remotely have to do with what is involved here seems even more dubious. *See generally Illinois v. Lidster,* 540 U.S. 419, 424 (2004). The phrase taken from *Parker* doesn't mean that the loser is responsible for all of the winners' fees forever as well, even when the claim is followed by an agreement that settles the parties' underlying dispute and thus the case. And of course it couldn't mean that the Congressional language of §505 is governed by *Parker.* It simply means a claim once gone can't be revived. And there was no danger of that when the parties were before the Seventh Circuit, which had a settlement agreement and an ensuing injunction to resolve.

### CONCLUSION

It bears repeating that the parties were at odds here and in the Court of Appeals over what the terms of the settlement agreement were. The Seventh Circuit held that Mr. Fryer and the Alliance had agreed that the Fryer report would not name the Alliance, and vice versa. There was only its brief statement that Count IV (as pled and which Judge Shadur had not given the Alliance the opportunity to replead) could not provide federal jurisdiction. But, concluded the Court of Appeals, diversity jurisdiction provided the necessary fulcrum for the case to proceed. The Court looked to the parties'

settlement of March 13th, which defined the scope of their obligations and the proper reach of the injunction, not to the Act.

Mr. Fryer's motion for fees [Dkt. #94] is denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 1/18/17